IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| KARA TRIOLA, | : |
| Plaintiff, | : Civil No. 22-840 (RBK/EAP) |
| v. | : **OPINION** |
| DOLGENCORP, LLC, *et al.*, | : |
| Defendants. | : |

**KUGLER**, United States District Judge:

Before the Court is Defendant Dolgencorp, LLC's Motion to Compel Arbitration ("Motion") (ECF No. 8). For the reasons set forth below, the Court **GRANTS** Dolgencorp's Motion.

**I.    BACKGROUND**

   **A.    Factual Background**

Dolgencorp allegedly employed Triola as a Dollar General store manager from July 27, 2019, until January 25, 2020. (ECF No. 8-7 ¶ 5). On July 18, 2019, before Triola began her employment, Dolgencorp apparently presented Triola with a Dollar General Employee Arbitration Agreement (the "Arbitration Agreement" or "Agreement"). (ECF No. 8-9). The two-page Agreement starts with a bolded provision advising Triola to "read [the] entire document carefully" because it "is an important document that concerns legal rights." (*Id.* at 1). The Agreement continues:

> **Dollar General . . . has a process for resolving employment related legal disputes with employees that involves binding arbitration** . . . . You agree that, with the exception of certain excluded claims described below, any legal claims

1

>or disputes that you may have against Dollar General . . . arising out of your employment with Dollar General or termination of employment with Dollar General ("Covered Claim" or "Covered Claims") will be addressed in the manner described in this Agreement.

(*Id.*) (emphasis in original).

Further down, the Rules and Procedures section provides more information on how the Agreement operates. (*Id.* at 1–2). It explains:

>The procedures in this Agreement will be the exclusive means of resolving Covered Claims relating to or arising out of your employment or termination of employment with Dollar General, whether brought by you or Dollar General. This includes, but is not limited to, claims alleging violations of wage and hour laws, *state and federal laws prohibiting discrimination, harassment, and retaliation*, claims for defamation or violation of confidentiality obligations, claims for wrongful termination, tort claims, and claims alleging violation of any other state or federal laws, except claims that are prohibited by law from being decided in arbitration, and those claims specifically excluded in the paragraph below.

(*Id.* at 1) (emphasis added). The Agreement specifically enumerates what types of claims it does not consider "Covered Claims": claims for unemployment insurance benefits, workers' compensation benefits claims, whistleblower claims under the Sarbanes-Oxley Act, and claims for benefits under the Employee Retirement Income Security Act. (*Id.*). Importantly, the Agreement informed Triola that, by signing the Agreement, "[y]ou expressly waive your right to file a lawsuit in court against Dollar General asserting any Covered Claims. You also waive your right to a jury trial." (*Id.* at 2).

Following the Rules and Procedures section, Triola had to check one of two boxes. If Triola checked the first box, she agreed to the Agreement's terms. If she checked the second box, she could "take up to 30 days after the start of [her] employment . . . to review and consider the Agreement." (*Id.*). The Agreement also required Triola to confirm her choice by signing her initials and dating the form. Triola checked the first box, then signed and dated the form. (ECF No. 8-7 ¶ 13).

2

In September 2019, about two months after Dolgencorp hired her, Triola claims she found out she was pregnant and would have a high-risk pregnancy, so she could not participate in heavy lifting. (ECF No. 7, "Amended Complaint" ¶ 3). Triola claims she informed her District Manager, who instructed Triola to visit her doctor. (*Id.* ¶ 4). Triola's doctor then allegedly "put her out of work due to lifting requirements and the complications it could have on her pregnancy." (*Id.*). On the next point, the Amended Complaint's timeline is unclear. Triola alleges her doctor ordered her not to work from November 26, 2019 to December 6, 2019 and December 4, 2019 to December 16, 2019. (*Id.*). So, Triola requested medical leave as a pregnancy accommodation. On or about December 17, 2019, Triola claims she provided her manager with a doctor's note, which said Triola could return to work on light duty, with certain restrictions; she was not permitted to load or unload trucks, climb ladders, or lift more than five pounds. (*Id.* ¶ 5). Dolgencorp allegedly denied this request. (*Id.* ¶ 6). Around January 3, 2020, Triola claims she provided an "out of work note" from her doctor due to her pregnancy and Dolgencorp's failure to grant light duty. (*Id.* ¶ 7). On January 25, 2020, Dolgencorp terminated Triola. (*Id.* ¶ 8).

**B.     Procedural Background**

On January 13, 2022, Triola filed suit against Dollar General Egg Harbor Township in the Superior Court of New Jersey, Law Division, Atlantic County, alleging violations of the New Jersey Law Against Discrimination (NJLAD), N.J.S.A. 10:5-1 et seq., involving pregnancy and gender discrimination and a hostile work environment. (ECF No. 1, Exhibit A, "Complaint"); (Amended Complaint). On February 16, 2022, Dollar General Egg Harbor Township removed the case to this Court. (ECF No. 1). On March 7, 2022, the Court consented to Triola substituting Dolgencorp as a named defendant. (ECF No. 6). On March 9, 2022, Dolgencorp filed this Motion. (ECF No. 8). On April 1, 2022, Triola opposed the Motion. (ECF No. 10).

## II. LEGAL STANDARD

### A. Federal Arbitration Act

The Federal Arbitration Act ("FAA") promotes the use of arbitration agreements. *See* 9 U.S.C. § 1 et seq. The FAA's purpose is to ensure that courts place arbitration agreements on equal footing with other contracts. *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1424 (2017). As such, the FAA "establishes an equal-treatment principle: A court may invalidate an arbitration agreement based on 'generally applicable contract defenses' like fraud or unconscionability, but not on legal rules that 'apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.'" *Id.* at 1426 (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). The FAA applies to both contracts that are arbitration agreements on their face and contracts that "have the defining features of arbitration agreements" but are not explicitly labeled as such. *Id.*

### B. Motion to Compel Arbitration

The Third Circuit adopted a two-step analysis for evaluating motions to compel arbitration. Courts must: (1) ensure a valid arbitration agreement exists; and, if one does, (2) determine whether the instant dispute falls within the Agreement's scope. *See Kirleis v. Dickie, McCamey, & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009). The standard by which a court must conduct this analysis can either be under Federal Rule of Civil Procedure 12(b)(6) (motion to dismiss) or Rule 56(a) (summary judgment). *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 771 (3d Cir. 2013). To determine which standard applies, courts should look to whether "it is apparent, based on 'the face of a complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause.'" *Id.*

at 776 (quoting *Somerset Consulting, LLC v. United Capital Lenders, LLC*, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011)). If so, the court must employ the Rule 12(b)(6) standard. *Id.*

On the other hand, "if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then 'the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question.'" *Id.* (citing *Somerset*, 832 F. Supp. 2d at 482). Neither party argues which standard should apply here.

The Court must apply the Rule 56 standard because Triola's Amended Complaint does not mention the Arbitration Agreement. As a result, the Court must look beyond the Amended Complaint and consider other documents to determine whether an enforceable arbitration agreement exists. *See Matczak v. Compass Grp. USA*, 21-cv-20415, 2022 WL 557880, *2 (D.N.J. Feb. 24, 2022). Thus, the Rule 56, not Rule 12(b)(6), standard applies.

To win under the Rule 56 standard, the movant must show that there is no "genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A disputed fact is material when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). It is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The court will not make credibility determinations or evaluate evidence; rather, the court will draw inferences in favor of the nonmovant and decide if there is a genuine issue for trial. *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004).

The burden is on the movant to establish the motion's basis and that there is no dispute as to a material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To satisfy this burden,

5

the movant may "either (1) submit[] affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrat[e] to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case." *Id.* at 331. The burden then shifts to the nonmovant to identify specific facts and evidence that contradict the moving party. *Id.* at 324. Summary judgment is not appropriate when "reasonable minds could differ as to the import of the evidence." *Anderson*, 477 U.S. at 250–51.

## III. DISCUSSION

### A. The Arbitration Agreement is Enforceable

To determine the Agreement's validity and enforceability, the Court must look to ordinary principles of state contract law. *Kirleis*, 560 F.3d at 160. "Under New Jersey law, '[a]n enforceable agreement requires mutual assent, a meeting of the minds based on a common understanding of the contract terms.'" *Aliments Krispy Kernels, Inc. v. Nichols Farms*, 851 F.3d 283, 290 (3d Cir. 2017) (quoting *Morgan v. Sanford Brown Inst.*, 225 N.J. 289 (2016)).

To be a valid waiver-of-rights provision, an arbitration agreement must be clear and unambiguous. *Moon v. Breathless, Inc.*, 868 F.3d 209, 214 (3d Cir. 2017); *Atalese v. U.S. Legal Servs. Grp., LP*, 99 A.3d 306, 309 (N.J. 2014) ("An arbitration clause, like any contractual clause providing for the waiver of a constitutional or statutory right, must state its purpose clearly and unambiguously."). An arbitration agreement is clear and unambiguous when it "explain[s] the difference between arbitration and litigation." *Moon*, 868 F.3d at 214; *Atalese*, 99 A.3d at 315 ("The waiver-of-rights language, however, must be clear and unambiguous—that is, the parties must know that there is a distinction between resolving a dispute in arbitration and in a judicial forum."). Although the law does not require specific language, "an arbitration provision will pass muster if it, 'at least in some general and sufficiently broad way . . . explain[s] that the plaintiff is

giving up her right to bring claims in court or have a jury resolve the dispute.'" *Frederick v. Law Office of Fox Kohler & Ass'n*, 852 Fed. Appx. 673, 677 (3d Cir. 2021) (quoting *Atalese*, 99 A.3d at 315–16); *see also Atalese*, 99 A.3d at 314 (stating that contracts "will pass muster when phrased in plain language that is understandable to the reasonable [person]").

Additionally, the parties must exchange sufficient consideration. *See Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 180 (3d Cir. 1999). In the employment context, creating an employment relationship "is sufficient consideration to uphold an arbitration agreement contained in an employment application." *Martindale v. Sandvik, Inc.*, 173 N.J. 76, 88 (2002).

### 1. The Agreement is Valid

Although Triola does not dispute that she signed the Arbitration Agreement, Triola nonetheless argues that the Agreement is invalid because it was not sufficiently clear, explicit, and unambiguous. Triola also asserts the Agreement should have been more specific about whether it covered NJLAD claims.

To start, the Agreement's terms are clear and unambiguous. *See Dolgencorp LLC v. Sica*, Civ. No. 22-cv-04269 (FLW), 2022 WL 4218179, *6 (D.N.J. Sept. 13, 2022) (examining the same arbitration agreement and finding it clear and unambiguous). The Rules and Procedures section defines Covered Claims: it says what Covered Claims are, in a non-exclusive list, and what they are not, in an exclusive list. The Agreement tells Triola that she would waive her right to file a lawsuit in court and her right to a jury trial. The first page of the Agreement defines arbitration, ensuring Triola understood how arbitration differs from litigation. Lastly, the Agreement states that the FAA governs it and provides clear instructions on how to opt out. As such, the Agreement, read in its entirety, is clear and unambiguous, and therefore adequately

informed Triola of its terms. *See id.* at *6; *see also Martindale*, 173 N.J. at 98 (finding arbitration agreement with similar language clear and unambiguous).

Triola's assertion that the Agreement is unclear because the "waiv[er] [of] the right to a jury trial is buried in a cluster of bullet points" and the language was "not in bold print or otherwise highlighted" is unpersuasive. (ECF No. 10). First, the Agreement's first page put Triola on notice of the Agreement's importance by stating, in bold, that Triola should "read this entire document carefully" because it "is an important document that concerns legal rights." (ECF No. 8-9, Exhibit B). Such a bolded warning on the Agreement's first page provides adequate notice. *See Cavallo v. Uber Techs., Inc.*, Civ. No. 16-4264 (FLW), 2017 WL 2362851, at *9 (D.N.J. May 31, 2017) (rejecting plaintiff's argument that the agreement buried the clause because the first page of the agreement provided a sufficient warning); *Perez v. Leonard Auto. Enters.*, No. BER-L-5882-16, 2016 N.J. Super. Unpub. LEXIS 2631, at *8–9 (N.J. Super. Ct. Law Div. Dec. 8, 2016) (finding a bolded warning to review the agreement carefully contributed to the clarity of the agreement).

Moreover, the Agreement's jury trial waiver is not "buried" just because it is part of a bulleted list. *See Romanov v. Microsoft Corp.*, Civ. No. 21-03564 (FLW), 2021 WL 3486938, at *4 (D.N.J. Aug. 9, 2021) ("[T]he fact that the required language does not appear in the introduction of the Agreement does not otherwise render the arbitration agreement deceptive or unclear."); *Cavallo*, 2017 WL 2362851, at *9 (finding arbitration agreement clear though it contained some information in a separate section titled "How this Arbitration Provision Applies"). What's more, the Agreement is only two pages long. *See Styczynski v. MarketSource, Inc.*, 340 F. Supp. 534, 546 (E.D. Pa. Nov. 30, 2018) (reasoning the waiver of rights provision was not buried in part because the agreement was three pages long); *Signor v. GWC Warranty*

8

*Corp.*, No. A-0949-17T2, 2018 WL 2247353, at *3 (N.J. Super. Ct. App. Div. May 17, 2018) (holding agreement did not bury arbitration clause because agreement was only eleven pages long).

The Agreement is also sufficiently specific. Even though the Agreement does not explicitly say it covers NJLAD claims, the Agreement says it covers federal and state laws prohibiting discrimination. (ECF No. 8-9); *see also Sica*, 2022 WL 4218179, at *6. Contrary to Triola's argument, the Agreement need not "refer specifically to the [NJLAD] or list every imaginable statute by name to effectuate a knowing and voluntary waiver of rights." *Garfinkel v. Morristown Obstetrics & Gynecology Assocs.*, 168 N.J. 124, 135 (2001).

Finally, Triola assented to the Agreement. Triola had the opportunity to review the Agreement. She provided her electronic signature and checked the box to enter into the Agreement. *Salters v. Brinker Int'l*, No. A-2546-20, 2022 N.J. Super. Unpub. LEXIS 401, at *5 (N.J. Super. Ct. App. Div. Mar. 11, 2022) (finding mutual assent where plaintiff was sent a copy of the agreement and acknowledged they reviewed and agreed to it). Triola had the option to, instead, wait thirty days to further consider the Agreement, but she chose to enter the Agreement immediately. *Ord. Grant. Mot. to Comp. Arb., Ryan v. Dollar General Corp.*, No. ESX-L-002902-21 (N.J. Super. Ct. Law Div. Apr. 25, 2022) (finding mutual assent where plaintiff checked off the box that immediately bound them to the agreement); *see Martindale*, 173 N.J. at 97 (noting that, in signing the agreement, plaintiff "was not rushed in any way"). Because Triola could have, but did not, take additional time to consider the Agreement, her assent is clear.

There is no disputed issue of material fact related to the Agreement's validity. The Agreement's terms are clear and unambiguous, and Triola agreed to those terms. Thus, the Agreement is valid.

### 2. Triola's Claims Fall within the Agreement's Scope

Not only is the Agreement valid, but Triola's claims fall within its scope. Although the Agreement is broad, it is clearly stated. *See Hubbard v. Comcast Corp.*, Civ. No. 18-16090, 2020 WL 4188127, at *8 (noting the agreement's broadness but granting the motion to compel arbitration). The Agreement, "at least in some general or sufficiently broad way, must explain that the plaintiff is giving up her right to bring her claims in court or have a jury resolve the dispute." *Atalese*, 99 A.3d at 315–16. Here, the Agreement is sufficiently broad enough to reasonably encompass Triola's cause of action. *Martindale*, 173 N.J. at 96. The Agreement states that Covered Claims "include[], but [are] not limited to, claims alleging violations of . . . state and federal laws prohibiting discrimination . . . ." (ECF No. 8-9; Exhibit B). NJLAD is a state law prohibiting discrimination. Therefore, Triola's claims fall within the Agreement's scope.

Because the Agreement is valid and Triola's claims fall within its scope, the Agreement is enforceable.

### B. The FAA Preempts NJLAD

Triola argues that the Arbitration Agreement is not enforceable because NJLAD precludes arbitration of her claims. The FAA, however, preempts NJLAD.

The FAA provides that a state law that conflicts with the FAA or frustrates its purpose violates the Supremacy Clause. *Kindred Nursing Ctrs.*, 137 S. Ct. at 1426. The United States Supreme Court emphasized the FAA's power, and made clear that the FAA will invalidate, or preempt, a state law if that state law explicitly or implicitly invalidates arbitration agreements. *Kindred Nursing Ctrs.*, 137 S. Ct. at 1425–27 ("The FAA thus preempts any state rule discriminating on its face against arbitration" and "displaces any rule that covertly accomplishes the same objective by disfavoring contracts that (oh so coincidentally) have the defining features

of arbitration agreements."). The Court noted that if the FAA did not preempt state law, it would be "trivially easy for States to undermine the [FAA]—indeed, to wholly defeat it." *Id.* at 1428.

NJLAD § 12.7 prohibits all pre-dispute agreements that waive the right to file a court action. N.J.S.A. § 10:5-12.7. Section 12.7 states that "[a] provision in any employment contract that waives any substantive or procedural right or remedy relating to a claim of discrimination, retaliation, or harassment shall be deemed against public policy and unenforceable" and that "[n]o right or remedy under the [NJLAD] or any other statute or case law shall be prospectively waived." *Id.*

Although § 12.7 does not use the magic words "arbitration agreement," it implicitly prohibits arbitration agreements because "[t]he waiver of the right to go to court and receive a jury trial is one of the primary objectives or 'defining features' of an arbitration agreement." *Antonucci v. Curvature Newco, Inc.*, 470 N.J. Super. 553, 556 (N.J. Super. App. Div. 2021) (quoting *Kindred Nursing Ctrs.*, 137 S. Ct. at 1426). Because § 12.7 prohibits contracts that include a defining feature of arbitration agreements, § 12.7 "subjects arbitration agreements to 'uncommon barriers' and fails to put them 'on an equal plane with other contracts.'" *N.J. Civ. Justice Inst. v. Grewal*, No. 19-17518, 2021 WL 1138144, at *7 (D.N.J. Mar. 25, 2021) (quoting *Kindred Nursing Ctrs.*, 137 S. Ct. at 1426–27). Put differently, "Section 12.7 effectively 'singles out arbitration agreements for disfavored treatment.'" *Antonucci*, 470 N.J. at 564 (quoting *Kindred Nursing Ctrs.*, 137 S. Ct. at 1426).

Moreover, many courts in New Jersey have considered whether the FAA preempts NJLAD, and those courts have consistently found that it does. *See Grewal*, 2021 WL 1138144, at *6; *Antonucci*, 470 N.J. Super. at 557; *Cangiano v. Doherty Grp., Inc.*, No. A-3082-19, 2022 WL 1052214, at *5; s*ee also Matczak*, 2022 WL 557880, at *6 (granting a motion to compel

arbitration under the FAA despite alleged NJLAD violations, but not expressly stating that the FAA preempts the NJLAD); *Patetta v. Red Hat, Inc.*, No. 18-11958, 2019 U.S. Dist. LEXIS 144689, at *19 (D.N.J. Aug. 23, 2019) (same); *Hubbard*, 2020 WL 4188127, at *9 (same); *Gomez v. Rent-A-Center, Inc.*, No. 2:18-cv-1528-KM-SCM, 2018 Dist. LEXIS 114910, at *5 (D.N.J. July 10, 2018) (same); *Skuse v. Pfizer, Inc.*, 236 A.3d 939, 957 (N.J. 2020) (same).

As such, the FAA preempts NJLAD, and the Arbitration Agreement remains enforceable.

## IV. CONCLUSION

For these reasons, the Court **GRANTS** Dolgencorp's Motion. The Court hereby **STAYS** this case pending arbitration. An appropriate order follows.

Dated: November 9, 2022                                    /s/ Robert B. Kugler
                                                            ROBERT B. KUGLER
                                                            United States District Judge